UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE R. MITCHELL,<br><br>  Plaintiff,<br><br>  vs.<br><br>JEFF CARLSEN, LAWRENCE PORTER, KARLAN POWELL, CHRIS RUNDLETT, JEFF WARD, and BRENDA DESHAZER,<br><br>  Defendants. | NO. CV-03-492-JLQ<br><br>MEMORANDUM OPINION AND ORDER **DENYING IN PART AND GRANTING IN PART** DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (Ct. Rec. 15). **Dale Mitchell** is appearing *pro se* in this matter. Assistant Attorney General **Aileen Miller** represents the Defendants. Plaintiff alleges that Defendants retaliated against him for actions he was pursuing in the Washington state legal system by confiscating and destroying some of his legal documents and religious materials. Plaintiff alleges that in so doing his First Amendment rights to petition for grievances and to the free exercise of religion were violated. Defendants respond that Plaintiff has provided no more than conclusory allegations of retaliatory motive and that Plaintiff has not provided admissible evidence that he was prohibited from engaging in conduct mandated by his faith.

## BACKGROUND

As Defendants are the party moving for summary judgment dismissal of Plaintiff's claims, the evidence and inferences therefrom are viewed in the light most favorable to Plaintiff.

This is a 42 U.S.C. § 1983 action in which Plaintiff, a member of the Islamic

ORDER - 1

faith[1], asserts that his First Amendment rights to access the court to address his legal claims and to freely exercise his religion were violated while he was incarcerated at the Airway Heights Correctional Center.  Plaintiff claims that he was pursuing legal action against prison officials in Washington state court in 2001 and 2002. (Ct. Rec. 5, ¶ 4.7-4.8).  Plaintiff was deposed by the Washington State Attorney General's office on February 14, 2003, as part of his state court litigation. (Ct. Rec. 21-2, p. 4).  Plaintiff's state lawsuit was dismissed on summary judgment in July, 2003. (Ct. Rec. 21-2, p. 25).  Plaintiff complains of cell searches in October, 2001; February, 2003; August, 2003; and December, 2003, in which property was confiscated and destroyed.

The October 2001 search was conducted by Defendant Powell and correctional officer Martha Hayes. (Deft. St. Fact ¶ 13).  A legal document (or documents) was confiscated.  Defendants claim this legal material belonged to another inmate, in violation of DOC policy. (Deft. St. Fact ¶ 13-14).  Plaintiff claims his legal documents were removed from his legal materials box and were never located or returned. (Dec. Mitchell ¶ 7-9).  Plaintiff filed a prison administrative grievance against Defendant Powell claiming that she confiscated his legal documents.

The February 20, 2003 cell search was conducted by Defendants Rundlett and Porter. (Deft. St. Facts ¶ 89).  Among the items seized as contraband were two copies of the Quran, Final Call religious newspapers, and a book entitled Message to the Black Man. (Deft. St. Facts ¶ 91-98).  Defendant claims the Qurans were seized because one had a hand-made cover on it and the other had a ripped cover.  Self-made covers are not allowed under DOC policy to prevent the concealing of contraband or ownership. (Id. at ¶ 94-95).  A book with a ripped cover is considered "altered" under DOC policy and inmates are not allowed to possess altered items. (Id.).  The Quran with the self-made cover was returned to Plaintiff after the cover was removed. (Id.).  The other Quran was

---

[1] At his deposition and in religious preference forms, Plaintiff indicated his primary religion was Islam.  However, he apparently also read the Bible and was a member of the Universal Life Church.

ORDER - 2

destroyed. (Id. at ¶ 111). Plaintiff disputes that the Quran had a ripped cover. (Mitchell dec. ¶ 59). Plaintiff also disputes that he ever authorized the destruction of the property through the DOC's property disposition process. (Id. at ¶ 30).

The Final Call newspapers were confiscated because they were over one week old - - in violation of DOC policy. (Deft. St. Facts ¶ 93). Plaintiff in his deposition effectively admitted that the Final Call newspapers were over one week old in the following exchange:

Q. What were the dates of those [Final Call] periodicals?

A. I cannot recall . . . I had a subscription to them and I had just been getting them as they come, you know.

Q. How often do they come?

A. They are periodicals, they come once a month.

Q. And, so, if you had more than one, you had several months worth?

A. Yes, that's exactly right.

Q. How many were taken?

A. Approximately 18 of them.

Q. So that would be about a year and a half worth?

A. Exactly.   (Depo. of Plaintiff, p. 117).

The book "Message to the Black Man", which is an Islamic text authored by Elijah Muhammad (Ct. Rec. 17, p. 489) was confiscated because the inmate's name and DOC number inside the front cover were blacked out and Plaintiff could not provide proof of ownership. (Deft. St. Fact ¶ 98). Plaintiff claims this book was a "marked legal exhibit for a pending lawsuit". (Plft St. Fact. ¶ 98). Plaintiff cites to his own declaration to dispute Defendants allegation that the book did not contain a name and DOC number as required by DOC policy. However, the declaration does not specifically refute Defendant's claim. Rather, the declaration states "my name and number was on all my property". (Mitchell dec. ¶ 59).

Plaintiff was infracted for possession of some of the property seized on February

ORDER - 3

20, 2003.  A hearing was held on the general infraction on February 25, 2003, at which Defendant Carlsen found Plaintiff guilty. (Deft. St. Fact ¶ 108-109).  Defendant Carlsen claims he asked Plaintiff how he wanted the seized property to be disposed of and offered to allow him to ship the property out at Plaintiff's expense. (Id. at ¶ 110). Carlsen claims Plaintiff refused to have the property shipped out and instead requested it be thrown away. (Id.).  Plaintiff did not sign the property disposition form.  (Ct. Rec. 21-2, p. 21).  Plaintiff disputes that he authorized the destruction of his property.  He claims that he never requested that his property be destroyed and that he requested that it be returned to him or stored until trial. (Mitchell dec. ¶ 30).  Plaintiff filed a Washington state tort claim relating to the February 20, 2003 search.

The August 2003 cell search was conducted by Defendant Powell and Officer Laurie Ramseyer. (Deft. St. Fact ¶ 34).  Legal documents were again confiscated. Plaintiff claims Powell took the documents (Mitchell dec. ¶ 35) and Defendants claim Officer Ramseyer confiscated the documents. (Deft. St. Fact ¶ 36).  These documents were taken because they belonged to other inmates. (Id. ¶ 35, 40-41).  Plaintiff was infracted and pled guilty, admitting that the documents belonged to others and probably should not have been taken to his cell. (Id. at ¶ 41).

The December 15, 2003 cell search was conducted by Defendants Powell and Ward. (Deft. St. Facts ¶ 51).  During this cell search, a Bible was confiscated. (Id. ¶ 59). Defendants allege the Bible contained a blacked out area where the inmate's name and DOC number should have been and was thus in violation of DOC policy. (Id. ¶ 63). Plaintiff contends that the Bible was his property and that all his property had his name and DOC number on it. (Mitchell dec. ¶ 47, 59).  Other inmates who used Plaintiff's Bible during group study attest that they did not see marks on it and it was not altered. (Ct. Rec. 26 & 27).  Plaintiff alleges that his Bible was destroyed in front of him and Defendant Ward "appeared to take pleasure in watching my reaction to his trashing of my bible". (Mitchell dec. ¶ 47).

In response to the February and December 2003 cell searches and confiscation of

ORDER - 4

property, Plaintiff filed Washington state tort claims. (Ct. Rec. 21-2, p. 12 & p. 32). In January, 2004, Defendant DeShazer filed an "initial serious infraction report" against Plaintiff after he filed the second tort claim. (Ct. Rec. 21-3, p. 6). The report alleged that Plaintiff was trying to obtain money from the state under false pretense. The basis of DeShazer's belief was that the second tort claim applied to some of the same property as the first tort claim. (Deft. St. Fact ¶ 116). Plaintiff was found guilty of the infraction on January 27, 2004. (Ct. Rec. 21-3, p. 7). Plaintiff then wrote a letter of appeal to Superintendent Maggie Miller-Stout and she had the infraction expunged from Plaintiff's record. (Ct. Rec. 21-3, p. 9 & Deft. St. Fact ¶ 118).

Plaintiff filed his Complaint in this court on December 26, 2003 and then filed a First Amended Complaint on May 5, 2004 (Ct. Rec. 5) which includes the allegations against Defendant DeShazer for conduct that occurred in 2004.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). Rather, the opposing party

ORDER - 5

must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

## DISCUSSION

The first step in any action under 42 U.S.C. § 1983 is to identify the constitutional right allegedly violated. *Graham v. Conner*, 490 U.S. 386, 394 (1989). A prerequisite to recovery under the Civil Rights Act is that plaintiff establish deprivation of a right secured by the Constitution and laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985). Plaintiff alleges that the cell search and confiscation of certain items of property were retaliation in violation of his First Amendment right to bring a legal action for his grievances. Plaintiff additionally alleges that his First Amendment right to the free exercise of religion was infringed when Defendants confiscated certain items of property that were religious is nature.

### I. The Retaliation Claims

It is well established that a prisoner may assert a cause of action against prison officials who retaliate against an inmate in response to the exercise of a constitutional right. *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985). To state a claim for retaliation, Plaintiff must establish: 1) that the activity he engaged in was constitutionally protected; 2) that the retaliation occurred because of, and infringed upon, his constitutionally protected activity; and that 3) the retaliatory actions were not reasonably related to legitimate penological interests. *Id.* at 531-32.

Participating in litigation and seeking legal redress are First Amendment protected activities. *Id.* at 531; see also *United Transportation Union v. Michigan Bar*, 401 U.S. 576, 585 (1971). Filing a grievance with prison officials is a First Amendment protected activity. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). Deliberate retaliation by state actors in response to use of legal process is actionable under § 1983 because it may chill an inmate's First Amendment right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Conduct used to discourage the exercise of First Amendment freedoms need not be particularly great in order to find that rights have been violated. *Thomas v.*

ORDER - 6

*Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989). For example, rights are infringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason. *Id.* citing *Elrod v. Burns*, 427 U.S. 347, 359 (1976); see also *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997)(stating that the injury is the retaliatory action's "chilling effect" on First Amendment rights and a "more substantial injury" is not required to support the retaliation claim).

Although it can be difficult to establish the motives or intent of the Defendants, Plaintiff may rely on circumstantial evidence. *Hines* at 267-68; *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995)("timing can properly be considered as circumstantial evidence of retaliatory intent"). In *Pratt,* the court focused on the timing of the alleged retaliatory actions and "most importantly" on whether there was evidence that defendants were "actually aware" of plaintiff's First Amendment activities. *Id.* at 808.

Even if a plaintiff establishes retaliatory motive, plaintiff also "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id.* at 806; but see *Austin v. Terhune*, 367 F.3d 1167, 1171 n. 3 ("[plaintiff's] **allegations** of retaliation for the filing of grievances are sufficient to satisfy the requirement that [plaintiff] plead an absence of a legitimate penological purpose for the retaliatory action")(emphasis added). Additionally, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of fact as to whether the action was taken in retaliation for the exercise of a constitutional right". *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Under the first factor in *Rizzo*, it is clear that Mitchell's activities related to pursuing his grievances in the prison administrative system and in state court enjoy First Amendment Protection. The second and third factors are not as clear. Mitchell alleges the confiscation of legal documents and religious items occurred because of, and infringed upon, his constitutionally protected rights. There is also the question of whether Defendant's actions, which Mitchell perceived as retaliatory, were reasonably

related to legitimate penological interests.

**October 2001 Cell Search**

The only Defendant involved in this search is Powell.  Plaintiff contends that during the cell search Powell learned of Plaintiff's "complaints filed against prison staff and officials" and confiscated legal materials. (Ct. Rec. 23, p. 2).  Powell alleged that only one legal document was taken and that it belonged to another inmate.  Plaintiff filed a prison grievance and appeals, all of which were denied.  In analyzing the timing of the alleged retaliatory action and Powell's awareness of Plaintiff's activities, the court finds that issues of fact remain.  Plaintiff has alleged that the retaliatory act (confiscation of legal materials) occurred immediately after Powell learned of his First Amendment activities.  An inference can be drawn from the timing and from Powell's alleged awareness of Mitchell's First Amendment activities that the motive was retaliatory.  Defendant's motion for summary judgment is **DENIED** as to the retaliation claim based on this search.

**February 2003 Cell Search**

This search involved Defendants Rundlett and Porter and the hearing and disposition of property involved Defendant Carlsen.  This search occurred when Plaintiff's state court action was pending against the State of Washington and Airway Heights Correctional Center's superintendent and chaplain.  The search occurred six days after Plaintiff was deposed in that matter.  Plaintiff claims that the timing of this search establishes retaliatory motive.  Defendants Porter and Rundlett claimed they had no knowledge of Plaintiff's state court litigation at the time of the search in February, 2003. (See Ct. Rec. 17, p. 448-464).  Plaintiff has offered no evidence that they were aware.  The mere fact that state court litigation is pending when a cell search and confiscation of property occurs does not establish retaliatory motive.  Defendants Rundlett and Porter are **GRANTED** summary judgment on Plaintiff's retaliation claim as to this search.

However, Defendant Carlsen did have knowledge of Plaintiff's pending litigation.

ORDER - 8

Despite this knowledge, and Plaintiff telling Carlsen that several of the items taken were to be used as exhibits in the state law suit, Carlsen ordered the items destroyed, even though Plaintiff refused to sign the property disposition form. The trier of fact could find that Carlsen's actions were retaliatory. Therefore, Carlsen cannot rely for his defense on an assertion that he was complying with a neutral Department of Corrections policy. Defendant Carlsen's motion for summary judgment on this retaliation claim is **DENIED.**

**August 2003 Cell Search**

The only Defendant involved in this search is Powell. Legal documents were confiscated. At this time, Powell definitely knew of Plaintiff's litigation and prison grievance First Amendment activities as Plaintiff had filed a staff misconduct grievance against Powell following the October 2001 search. However, Plaintiff cannot establish, as a matter of law, the third-prong under *Rizzo* that the alleged retaliatory actions were not reasonably related to legitimate penological interests. Powell seized the documents contending they belonged to another inmate and Plaintiff admitted such and pled guilty to the infraction. Defendant Powell's motion for summary judgment is **GRANTED** as to the retaliation claim based on the August 2003 search.

**December 2003 Cell Search**

The Defendants involved in this search were Powell and Ward. By this time, Powell was certainly aware of Plaintiff's First Amendment protected activities. Ward declares that he was not aware of grievances against Powell, that the grievance process is confidential, and that the search was not based on Plaintiff's prior filing of grievances. (Ct. Rec. 17, p. 438). Plaintiff does not offer evidence to dispute Ward's unawareness of his prior grievances. Plaintiff also alleges Ward filed a false infraction against him for which he was found not guilty. This infraction was based on possession of thermal clothing and sweatpants that Ward believed Plaintiff was not allowed to have. (Ct. Rec. 17, p. 440 & 446). The clothing was not related to Plaintiff's First Amendment activities, Plaintiff was found not guilty of the infraction as the clothes were state issued

ORDER - 9

at a previous institution, and no sanctions were imposed.  Defendant Ward is **GRANTED** summary judgment on the retaliation claim related to this cell search.  Defendant Powell's request for summary judgment on this claim is **DENIED**, as the trier of fact could find from Powell's prior involvement with the cell searches, knowledge of Plaintiff's First Amendment activities, and Plaintiff's filing of a staff misconduct grievance against her that her motives were retaliatory.

**Retaliation claim against Brenda Deshazer**

Deshazer's filing of the infraction against Mitchell was clearly because of his First Amendment protected activity of filing Washington state tort claims.  What is at issue is whether Deshazer's motive was an honest belief that Mitchell was fraudulently abusing the tort claim system, or retaliation.  Deshazer's infraction report states that "the search report shows the disposition of all items confiscated and Mitchell signed that he understood the disposition and did not contest these items".  In fact, as to the February, 2003 cell search, which was a basis for the tort claims, Mitchell had refused to sign the property disposition form and the form so indicated.  The trier of fact could find that the filing of the infraction was not an honest mistake, but was retaliatory.  However, upon writing a letter to the Superintendent of Airway Heights, Mitchell was successful in having the infraction and sanction imposed expunged from the record.

Deshazer's motion for summary judgment on the retaliation claim is **DENIED**.  Although Mitchell's injury is minimal given that the infraction and sanction were expunged, and if Mitchell succeeded on this claim damages would likely be nominal, the court is concerned with the chilling effect on First Amendment activities that being forced to defend retaliatory infraction reports would have.

**II.  The Free Exercise Claims**

In order to establish a violation of the First Amendment right to free exercise of religion, a prisoner must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests.  *Freeman v. Arpaio*,

ORDER - 10

125 F.3d 732 (9th Cir. 1997).  "In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Id.* at 737 (internal quotations and citations omitted).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court utilizes the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987): 1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; 2) whether the prisoners retain alternative means of exercising the right at issue; 3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and 4) whether the prisoner has identified easy alternatives to the regulations which could be implemented at a minimal cost to legitimate penological objectives.  The court will apply *Turner* and *Freeman* to each of the allegedly wrongful searches and the actions of the individual Defendants.

**October 2001 Cell Search**

There is no allegation that Mitchell's First Amendment right to free exercise of religion was infringed by this search.

**February 2003 Cell Search**

Mitchell contends that the following religious property was wrongfully confiscated by Porter and Rundlett and its destruction authorized by Carlsen: a Quran, Final Call religious periodicals, and the book "Message to the Black Man in America".  Mitchell admits that the Final Call newspapers were over one week old and thus his possession of them violated Department of Corrections policy.  Summary judgment is **GRANTED** to the three Defendants as to the confiscation and destruction of the Final Call newspapers.

Mitchell does dispute that the Quran had a ripped cover and even the declarations of the searching officers slightly differ. (See Ct. Rec. 17, p. 451 - Porter stating the "cover was ripped"; and Ct. Rec. 17 p. 463 - Rundlett stating the Quran had been altered by "having the cover ripped off").  Mitchell also disputes that his religious text,

ORDER - 11

"Message to the Black Man" was not properly marked with his name and DOC number. Accordingly, genuine issues of material fact exist as to whether these items were seized in accordance with DOC policy. If they were not, then the seizure and subsequent destruction was not justified as reasonably related to legitimate penological interests. Defendants motion for summary judgment on the religious freedom claim concerning the seizure of the Quran and book "Message to the Black Man" in February, 2003, is **DENIED**.

**August 2003 Cell Search**

There is no allegation that Mitchell's First Amendment right to free exercise of religion was infringed by this search.

**December 2003 Cell Search**

Mitchell contends that his Bible was seized and destroyed by Defendants Powell and Ward. Mitchell has submitted his declaration and that of other inmates in support of his claim that the Bible was used in group bible studies and discussion, and that the Bible was not altered and was properly marked with Mitchell's name and DOC number. Again, genuine issues of material fact exist as to whether this Bible was seized in accordance with DOC policy. If it was not, then the seizure and subsequent destruction was not justified as reasonably related to legitimate penological interests. Defendants' motion for summary judgment on the religious freedom claim concerning the seizure and subsequent destruction of the Bible during the December 2003 search is **DENIED**.

## CONCLUSION

By way of summary, the following claims remain against the following Defendants and shall proceed to trial:

1) Defendant Carlsen - retaliation and interference with free exercise of religion claims remain as to the February 2003 cell search and disposition of Quran and religious text "Message to the Black Man".

2) Defendant Porter - No retaliation claims survive summary judgment as to Defendant Porter. A free exercise claim remains as to Porter's participation in the cell

search of February 2003

3) Defendant Powell - retaliation claims remain as to the October 2001 and December 2003 cell searches. A free exercise claim remains as to the December 2003 search and destruction of Bible.

4) Defendant Rundlett - No retaliation claims survive summary judgment as to Defendant Rundlett. A free exercise claim remains as to Rundlett's participation in the cell search of February 2003.

5) Defendant Ward - No retaliation claims survive summary judgment as to Defendant Ward. A free exercise claim remains as to Ward's participation in the cell search of February 2003.

6) Defendant DeShazer - There is no free exercise claim against DeShazer. The retaliation claim based on the filing of an infraction report in January 2004 survives summary judgment.

No retaliation claims or free exercise claims based on the August 2003 cell search survive summary judgment. Accordingly, all claims related to that search are dismissed.

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Ct. Rec. 15) is **DENIED IN PART and GRANTED IN PART as set forth herein**. Defendant has raised genuine issues of material fact as to some of the claims asserted in his First Amended Complaint (Ct. Rec. 3). Accordingly, this matter shall proceed to trial.

2. A telephonic pretrial conference shall be held on **Friday, September 2, 2005, at 10:00 a.m..** Counsel for the Defendants shall contact Plaintiff's counselor at Airway Heights and secure a phone number at which Plaintiff can be reached. Defense counsel shall convey this number and the telephone number at which she may be reached ,to the court's judicial assistant, Margaret Buckner, at 509-353-2180 prior to August 30, 2005.

3. At the telephonic pretrial conference, the court will, *inter alia*, discuss with

ORDER - 13

the Plaintiff and counsel for the Defendants the fact that cases such as these are most often resolved by settlement of the claims, having in mind that even if successful on the claims, the damages to the Plaintiff appear to be nominal.  Prior to the pretrial conference, counsel for the Defendants and the Plaintiff shall make good faith efforts to reach a settlement of these claims.

4.  Trial briefs, requested jury instructions and requested voir dire shall be served and filed to be in the court's hands by **September 23, 2005**.

5.  A jury trial shall commence in Spokane, Washington at **9:00 a.m. on Monday, October 3, 2005**.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 4th day of August, 2005.

<u>s/ Justin L. Quackenbush</u>
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 14