UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DALE R. MITCHELL,                    ) No. CV-03-492-CI
                                     )
          Plaintiff,                 ) ORDER GRANTING IN PART AND DENYING
                                     ) IN PART DEFENDANTS' SECOND MOTION
     v.                              ) FOR SUMMARY JUDGMENT; DENYING
                                     ) PLAINTIFF'S MOTION FOR SUMMARY
JEFFREY CARLSEN, LAWRENCE            ) JUDGMENT; GRANTING IN PART
PORTER, KARLAN POWELL,               ) PLAINTIFF'S MOTION FOR APPOINTMENT
CHRIS RUNDLETT, JEFF WARD,           ) OF COUNSEL; GRANTING IN PART
and BRENDA DESHAZER,                 ) APPLICATION FOR WRITS AD
                                     ) TESTIFICANDUM; AND RENOTING
          Defendants.                ) PRETRIAL CONFERENCE AND CERTAIN
                                     ) OTHER SCHEDULING DATES
                                     )
                                       **---- ACTION REQUIRED ----**

     BEFORE THE COURT are cross-Motions for Summary Judgment,
submitted to the court without oral argument on December 16, 2005.
(Ct. Rec. 39, 66.)   Plaintiff is appearing pro se; Assistant
Attorneys General Mary McLaughlan and Dan Judge represented
Defendants.    The parties have consented to proceed before a
magistrate judge.  (Ct. Rec. 51.)

     Plaintiff, an inmate at the Airway Heights Corrections Center
(AHCC), seeks relief under 42 U.S.C. § 1983 from Defendants in both
their individual and official capacities, alleging they retaliated
against him, confiscated and destroyed religious and legal

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
AND CERTAIN OTHER SCHEDULING DATES -  1

materials, and subjected him to disciplinary actions after he engaged in litigation and filed grievances against prison officials. Remaining defendants include Jeffrey Carlsen, M—Unit Sergeant; Chris Rundlett, AHCC Corrections Officer (C/O); Lawrence Porter, AHCC Corrections Officer; Karlan Powell, AHCC Corrections Officer; Jeff Ward, AHCC Corrections Officer, and AHCC Sergeant Brenda DeShazer of K-Unit.

Previously, Senior Judge Quackenbush ruled on Defendants' first Motion for Summary Judgment dismissal (Ct. Rec. 33, filed August 4, 2005); only the claims not addressed by that Order remain at issue.

I. Retaliation claims as follows: (a) October 2001 claim against Defendant Powell; (b) February 2003 claim against Defendant Carlsen;[1] (c) December 2003 claim against Defendant Powell;[2] and (d) claim against Defendant DeShazer.

II. Free Exercise claims as follows: (a) against Defendants Porter and Rundlett[3] involving February 2003 search, confiscation

---

[1]Claims against Defendants Rundlett and Porter were dismissed.

[2]Claims against Defendant Ward were dismissed.

[3]In their brief, Defendants note there are claims remaining against Defendant Ward as to the Free Exercise claim based on the February 2003 search. (Ct. Rec. 67 at 2.) The Order on Summary Judgment does not reference claims against Defendant Ward. (Ct. Rec. 33 at 11.) It appears the court's summary of claims as to Defendant Ward referenced the February 2003 search instead of the December search. (Ct. Rec. 33 at 13.) There are no allegations

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES -  2

and destruction of Holy Qu'ran and *Message to the Black Man,* by Elijah,[4] and (b) against Defendants Powell and Ward,[5] involving December 2003 search and confiscation of Holy Bible.[6]  (Ct. Rec. 33.)

## SUMMARY JUDGMENT

FED. R. CIV. P. 56(c) states a party is entitled to summary judgment in its favor, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is

_____

Defendant Ward was involved in the claims arising from the February 2003 search.

[4]Claims involving confiscation of *Final Call* publications were dismissed.

[5]Defendants do not reference Defendant Ward as a party to this claim (Ct. Rec. 67 at 2); however, the Order on Summary Judgment specifically refers to Defendant Ward, based on Defendants' Statement of Facts identifying Defendant Ward as the individual who seized the Bible during the February search.  (Ct. Rec. 33 at 12; Ct. Rec. 64 at ¶ 48.)

[6]There were no Free Exercise claims alleged as to the October 2001 and August 2003 searches.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 3

"some metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The party opposing the motion must present facts in evidentiary form and cannot merely rest on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Affidavits, depositions, answers to interrogatories and admissions are sufficient to raise a material question of fact. *Celotex*, 477 U.S. at 324. Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). The court will examine the direct and circumstantial proof offered by the nonmoving party and the permissible inferences which may be drawn from such evidence. An expert opinion may defeat summary judgment if it appears the expert is competent to give an opinion and the factual basis for the opinion is disclosed. *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995). A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Electric Service Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp v. Square D. Company*, 68 F.3d 1216 (9th Cir. 1995).

Plaintiff has been advised pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (Ct. Rec. 58), and has responded to Defendants' Motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 4

1

**42 U.S.C. § 1983**

2   To demonstrate a claim under 42 U.S.C. § 1983, Plaintiff must

3   allege and prove (1) the violation of a right secured by the

4   Constitution and laws of the United States, and (2) the deprivation

5   was committed by a person acting under color of state law. *Parratt*

6   *v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other*

7   *grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Leer v.*

8   *Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).   A person subjects

9   another to a deprivation of a constitutional right when committing

10  an affirmative act, participating in another's affirmative act, or

11  omitting to perform an act which is legally required. *Johnson v.*

12  *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).   To hold a defendant

13  liable for damages, the wrongdoer must personally cause the

14  violation. *Leer*, 844 F.2d at 633.  There is no respondeat superior

15  liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

16  Thus, a supervisor is liable under § 1983 only if he/she

17  "participated in or directed the violation, or knew of the violation

18  and failed to prevent it." *Id*.   If damages are sought, sweeping

19  conclusory allegations against a prison official will not suffice;

20  an inmate must set forth specific facts as to each individual

21  defendant's participation. *Leer*, 844 F.2d at 634.

22  **OFFICIAL CAPACITY**

23  Plaintiff alleges claims against all remaining Defendants in

24  their official capacities.  Claims alleged against an individual in

25  his or her official capacity do not involve claims against a

26  "person" for § 1983 liability and are foreclosed by *Will v. Michigan*

27

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
AND CERTAIN OTHER SCHEDULING DATES - 5

1  *Dept. of State Police*, 491 U.S. 58, 71 (1989).   Accordingly,

2  Plaintiff's claims alleged against Defendants in their official

3  capacity are **DISMISSED WITH PREJUDICE.**

**LOSS OF PROPERTY**

5      To the extent Plaintiff seeks compensation for the loss of his

6  property, those claims are not permitted under *Zinermon v. Burch*,

7  494 U.S. 113, 128-130 (1990), citing *Hudson v. Palmer*, 468 U.S. 517

8  (1984).   Plaintiff may address those claims adequately through

9  state tort law.  R.C.W. 4.92.  Accordingly, Defendants' Motion to

10  Dismiss claims seeking compensation for loss of property is **GRANTED.**

**REMAINING CLAIMS**

12      Defendants contend Plaintiff failed to demonstrate he was

13  adversely impacted as a prisoner as a result of the alleged

14  incidents of retaliation.   They note under *Resnick v. Hayes*, 213

15  F.3d 443, 449 (9th Cir. 2000), Plaintiff must demonstrate actual

16  injury. Defendants contend his disciplinary consequences were

17  overturned and Plaintiff has failed to demonstrate his right to

18  access the courts was chilled in any fashion.   Contrary to the law

19  expressed in the court's first Order denying summary judgment (Ct.

20  Rec. 33 at 7), Defendants contend recent trends in case law suggest

21  a threshold showing of injury is necessary in retaliation cases.

22      Within the prison context, a viable claim of First Amendment

23  retaliation entails five basic elements: (1) An assertion that a

24  state actor took some adverse action against an inmate, (2) because

25  of (3) that prisoner's protected conduct, and that such action (4)

26  chilled the inmate's exercise of his First Amendment rights, and (5)

27
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
    APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
    WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
    AND CERTAIN OTHER SCHEDULING DATES -  6

the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 568 (9th Cir. 2005), citing *Resnick*, 213 F.3d at 449; *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994).   In *Mendocino Environmental Center v. Mendocino County*, the Ninth Circuit held the appropriate First Amendment inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." 192 F.3d 1283, 1300 (9th Cir. 1999), quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)*, vacated on other grounds*, 520 U.S. 1273 (1997) (internal quotation marks and citation omitted). Because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity," a plaintiff need not demonstrate that his speech was "actually inhibited or suppressed." *Id.*   It is necessary only that First Amendment rights be chilled, not necessarily silenced. *Id.*

In light of the Order (Ct. Rec. 33) denying summary judgment, concluding injury need only be minimal, and the holding in *Rhodes,* Defendants' argument to dismiss the retaliation claims on failure to make a threshold showing of injury is not persuasive.   Defendants have not offered sufficient authority to revisit that ruling. Defendants' Motion for dismissal of the retaliation claims on legal grounds is **DENIED.**

The court next explores dismissal of each of the retaliation and Free Exercise claims on factual grounds.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 7

I.    **RETALIATION CLAIMS**

    (a) **Retaliation claim against Defendant Powell**

    Plaintiff alleges he was pursuing claims against prison officials when his cell was searched shortly thereafter by Defendant Powell in October 2001.  During that search, certain legal materials belonging to another inmate were confiscated, as well as non-legal materials found in Plaintiff's legal box.  Although there were grounds for filing an infraction, Plaintiff received only a warning.  Plaintiff was not present at the search.  In the court's prior Order, the timing of the search and Plaintiff's allegation that Defendant Powell knew of his legal activities created questions of fact.  (Ct. Rec. 33 at 8.)  Here, there is no dispute the search yielded contraband items, including legal materials belonging to another inmate and non-legal items mixed in with separately stored legal materials.  Plaintiff contends that he ultimately "dismissed the grievance" because he had nothing to support his allegation the search was retaliatory, although his state court proceeding was ultimately dismissed because "many of my legal materials relating to the pending lawsuit was [sic] removed by C/O Powell and not returned or located."  (Ct. Rec. 83 at ¶¶ 11, 12.)  However, in his deposition, when queried whether "Ms. Powell was aware of any complaints or grievances prior to the October 2001 search," Plaintiff responded "No."  (Ct. Rec. 69 at 31, Mitchell Dep. 174:8-10.)  Based on the fact no infraction was issued, undisputed contraband was found, and Plaintiff's admission Defendant Powell was not aware of his legal activities at the time of the search,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 8

1  Defendants' Motion to dismiss this claim is **GRANTED;** the claim is
2  **DISMISSED WITH PREJUDICE.**

3      **(b)   Retaliation Claim against Defendant Carlsen**

4      At an infraction hearing on February 25, 2003, Defendant
5  Carlsen found Plaintiff guilty.  As noted in the court's prior
6  Order, Defendant Carlsen had knowledge of Plaintiff's pending
7  litigation. (Ct. Rec. 33 at 8.)  Despite this knowledge, including
8  statements by Plaintiff that several items seized in the February
9  2003 search were exhibits in a pending lawsuit, the items were
10 ordered destroyed.   Plaintiff was sentenced to three days of
11 confinement and his property was destroyed.  (Ct. Rec. 5 at ¶ 4.29)

12     Defendant Carlsen, in the second Motion for Summary Judgment
13 dismissal, contends the retaliation claim is weak because Defendant
14 Carlsen merely heard the disciplinary hearing and disposed of the
15 property involved.  Defendant notes he did not direct the search to
16 occur and there is no evidence he was involved in Plaintiff's
17 grievances or other litigation.  (Ct. Rec. 67 at 19-20.)  These
18 factual assertions, however, do not address whether Defendant
19 Carlsen properly disposed of the contraband in light of Plaintiff's
20 representation they were exhibits in a pending lawsuit and the
21 property should be held pending further advice from legal counsel.
22 Accordingly, Defendant's Motion to dismiss this claim is **DENIED.**

23     **(c)   Retaliation Claim against Defendant Powell**

24     The court denied summary judgment dismissal of the retaliation
25 claim against Defendant Powell based on the December 2003 cell
26 search, noting the trier of fact could find from Defendant Powell's

27 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
   MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
28 SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
   APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
   WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
   AND CERTAIN OTHER SCHEDULING DATES - 9

prior involvement with cell searches, knowledge of Plaintiff's First Amendment activities and a staff misconduct grievance against her. (Ct. Rec. 33 at 10.)  Defendant Powell now argues she was not aware of litigation or grievance activities by Plaintiff, apart from a grievance filed two years earlier as a result of the October 2001 search.  (Ct. Rec. 69 at ¶ 26.)  She also states she only scanned and did not read any of Plaintiff's legal work during the search. (Ct. Rec. 69 at ¶ 28.)  Defendant Powell also contends random cell searches are authorized by DOC policy to promote safety and internal security.  Under case law, cell searches are an appropriate measure for maintaining prison security. *Bell v. Wolfish,* 441 U.S. 520, 557 (1979).

Plaintiff presents declarations from two inmates who witnessed the December search by Defendant Powell.  They aver the search took an hour and 45 minutes, as opposed to the normal 30 minutes, that legal documents were passed systematically between Defendants Powell and Ward, and discussion ensued between them regarding the contents of the documents. (Ct. Rec. 85, Givens Decl. at ¶ 2, 4, 5; Ct. Rec. 86, Bird Decl. at ¶ 3, 4, 5.)  This evidence is sufficient to raise a material question of fact and would permit a trier of fact to find Powell's search was retaliatory.  Accordingly, Defendants' Motion to dismiss this claim is **DENIED.**

(d)  **Retaliation Claim against Defendant DeShazer**

In a prior Order, the court found Defendant DeShazer infracted Plaintiff solely because of his use of the Washington state tort claims procedure, protected activity under the First Amendment.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 10

(Ct. Rec. 33 at 10.)   The remaining issue was whether Defendant DeShazer acted on an honest belief Plaintiff was fraudulently abusing the tort claim system.   Senior Judge Quackenbush noted any damage to Plaintiff would be minimal because the infraction was ultimately expunged.[7]   A review of the tort claims indicates the first alleged claims arising from the February 2003 cell search; the second re-alleged the February 2003 claims, but also added claims stemming from the December 2003 cell search.   (Ct. Rec. 42, at 44-50.)   Given the obvious differences with respect to the substance of the two completed tort claim forms, a material question of fact is raised and a trier of fact could conclude Defendant DeShazer reasonably should have recognized the difference in claims and acted with retaliatory intent.   Thus, Defendants' Motion to dismiss this claim is **DENIED.**

## II.   FREE EXERCISE CLAIMS

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," U.S. CONST. amend. I. Only beliefs which are both "sincerely held" and "religious in

---

[7]Senior Judge Quackenbush stated in his Order, ["a]lthough Mitchell's injury is minimal given that the infraction and sanction were expunged, and if Mitchell succeeded on this claim damages would likely be nominal, the court is concerned with the chilling effect on First Amendment activities that being forced to defend retaliatory infractions reports would have."  (Ct. Rec. 33 at 10.)

nature" are protected under the First Amendment. *DeHart v. Horn*, 227 F.3d 47, 52 (3rd Cir. 2000). Purely secular views are not protected. *Frazee v. Ill. Dept. of Employment Sec.*, 489 U.S. 829, 833 (1989) ("[t]here is no doubt that only beliefs rooted in religion are protected by the Free Exercise Clause") (quotation and citation omitted). To show a Free Exercise burden that is unconstitutional, a litigant must do more than merely show the government action in some way affected his religion. *E.g., Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988). To prevail on a Free Exercise claim, Plaintiff must prove the governmental act burdens the adherent's practice of his religion by pressuring him (1) to commit an act forbidden by the religion, or (2) by preventing him from engaging in conduct or having a religious experience which the faith mandates. *Graham v. C.I.R.*, 822 F.2d 844, 850-51 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680 (1989). The interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Id.* Here, only the second circumstance is at issue.

**(a)   Free Exercise Claim against Defendants Porter and Rundlett**

During the February 2003 cell search, Defendants Porter and Rundlett seized religious items, including a Holy Qu'ran, and a Nation of Islam study book (*Message to the Blackman*, by Elijah Muhammad). Defendants proffer the Holy Qu'ran was confiscated because it had a ripped and torn cover in violation of prison policy. (Ct. Rec. 69 at ¶ 31.) Additionally, they state the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 12

*Message* book was confiscated because an inmate's name and DOC number inside the front cover were blacked out and Plaintiff could not provide proof of ownership. (Ct. Rec. 69 ¶ 30.) Plaintiff admitted the Qu'ran cover was "loose and torn and raggedy" and that it wasn't completely connected to the book because "when you open it the front part would fall down." (Ct. Rec. 69, Ex. A, Att. A, Mitchell Dep. at 43:8-25.) Additionally, a second Qu'ran was seized because it had a self-made cover on the book. Plaintiff admitted the second copy was returned to him by Defendants after he removed the cover. (Ct. Rec. 69, Ex. 1, Att. A, Mitchell Dep. at 135:21-25.)

Defendants move for dismissal of the Free Exercise violations, contending Plaintiff failed to demonstrate "more than an inconvenience" with respect to the practice of his Muslim beliefs, citing *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Defendants contend it is undisputed Plaintiff had available to him other copies of the Holy Qu'ran, including those available through the prison library, the second copy which was returned to him, or by purchase through an approved vendor. In similar fashion, Defendants contend the *Message* publication was not necessary to the practice of his religion, as Plaintiff was not prevented by Defendants from participating in Muslim religious services and activities available to inmates.

Plaintiff responds the second copy was returned to him because it was written in Arabic text, which he does not understand. (Ct. Rec. 82 at ¶ 7; Ct. Rec. 84, Ex. 38, Sarden Decl. at ¶¶ 4, 5.) He further states Defendants refused to remove the cover from the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 13

confiscated English version and return it to him. (Ct. Rec. 82 at ¶ 9.) Plaintiff also averred he made attempts to obtain a new copy of the Qu'ran, but the chaplain indicated he could provide only donated copies and none were then available. (Ct. Rec. 83, Mitchell Decl. at ¶ 42.) Plaintiff avers he did not have the resources to obtain a new copy through a vendor. (Ct. Rec. 82 at ¶ 16.) Finally, Plaintiff asserts he practices the Muslim faith as espoused by the Nation of Islam (NOI),[8] not as practiced by the Sunni Muslims, the sect permitted at AHCC. As such, Plaintiff argues the practice of his NOI faith was restricted to the privacy of his cell. Thus, the deprivation of the religious books, as well as his prayer beads substantially interfered with the basic tenets of his practice of the NOI religious doctrine. (Ct. Rec. 83, Mitchell Decl. at ¶¶

---

[8]The Nation of Islam movement is "based on the [Qur'an] as interpreted by Elijah Muhammad and ministers within the Nation" *Cooper v. Tard*, 855 F.2d 125, 126 (3d Cir. 1988), as well as the Holy Bible. In *Sutton v. Rasheed*, 323 F.3d 236, 242 (3rd Cir. 2003), the court noted:

> Fard Muhammad was the founder of the Nation of Islam, and followers believe him to have been the Messiah. Elijah Muhammad is believed by Nation of Islam faithful to have been a prophet. Louis Farrakhan is a prominent minister in one of the branches of the Nation of Islam. The texts in question are primarily those written by Elijah Muhammad: *Message to the Blackman, The Supreme Wisdom, How to Eat to Live, Our Savior Has Arrived* and *The Fall of America.* . . . In her deposition, plaintiffs' expert, Aminah Beverly McCloud, a professor of Islamic Studies in the Department of Religious Studies at DePaul University, states that the texts in question are "required reading by the faithful."

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 14

4, 5, 13, 14, 17, 24.)

In a Declaration submitted to the Spokane County Superior Court and provided to this court in Plaintiff's materials, David K. Bon stated he was currently employed by the Department of Corrections as Chaplain at the AHCC. Chaplain Bon notes the Islamic or Muslim group meets in the religious activity center on Friday from 1:00 p.m. to 2:00 p.m. for Ju'mah prayer, a service for all inmates of the Islamic faith. He further notes AHCC does not distinguish between separate groups within the Islamic faith. Ta'leem, a Muslim study group, meets on Wednesday evening from 8:05 p.m. to 9:20 p.m. and is open to all inmates. Inmates also have access to Muslim literature and materials. (Ct. Rec. 83, Ex. 36, Bon Decl. at ¶¶ 1, 4.) Chaplain Bon also indicated Muslim inmates are not issued sacred boxes because they do not have sacred religious items that are designated as such by the community religious leaders who coordinate with the Religious Program Manager at DOC. Religious groups are permitted to collect charitable contributions from their membership to assist in obtaining religious supplies; no request has been received from the NOI members. Additionally, no request has been received from NOI inmates for assistance in identifying outside volunteers or sponsors to lead their group. (Ct. Rec. 83, Ex. 36, Bon Decl. at ¶¶ 9, 13.) However, Chaplain Bon does not address specifically the approved NOI religious practices.

Assuming for purposes of this decision, that the Qu'ran returned to Plaintiff was the Arabic version and that he was deprived of the *Message* publication, the question is whether these

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 15

deprivations constituted a substantial interference with a tenet or belief central to the religious doctrine followed by Plaintiff. *Goehring v. Brophy*, 94 F.3d 1294, 1299 (9th Cir. 1996)*, cert. denied*, 520 U.S. 1156 (1997). Additionally, a question is raised as to why the Arabic version was returned and not the English version since the reason for confiscation was the same for both-- inappropriate covers.

As set forth in *Sutton*, both publications are essential to the practice of the tenets of Plaintiff's religion. Therefore, Defendants' argument is not persuasive. A question of fact remains whether the seizure of the Islamic books and prayer beads were in response to a legitimate penological interest or a violation of Plaintiff's First Amendment right to Free Exercise. (Ct. Rec. 33 at 12.) Defendants' Motion for summary judgment dismissal of this Free Exercise claim is **DENIED.**

**(b)** **Free Exercise Claim against Defendants Powell and Ward**

On December 15, 2003, Defendants Powell and Ward searched Plaintiff's cell at KA-13 and confiscated a Holy Bible. Defendants alleged the Bible contained a blacked-out area where the inmate's name and DOC number should have been and was thus in violation of DOC policy. (Ct. Rec. 69 at ¶ 25.) Plaintiff contends the Bible was properly identified as his property and was listed on his inventory sheet. (Ct. Rec. 42 at 20.) Other inmates who used Plaintiff's Bible during group study attested they did not notice marks or alterations. (Ct. Rec. 26 & 27.) Plaintiff alleges his Bible was destroyed in front of him and Defendant Ward "appeared to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE AND CERTAIN OTHER SCHEDULING DATES - 16

take pleasure in watching my reaction to his trashing of my Bible."
(Ct. Rec. 23, Mitchell Decl., ¶ 47.)   Defendants offer no new
argument on dismissal of this claim.   Accordingly, to the extent it
is raised in Defendants' Motion to Dismiss all claims, the Motion is
**DENIED.**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff moves for summary judgment, contending Defendants
failed to follow DOC policy directives and AHCC Field Instructions.
He contends the policies and instructions are controlling and
binding on Defendants and that Defendants violated such policies and
instructions when they destroyed his religious property without
consulting the AHCC chaplain or the Property Room staff, as required
by those regulations.

Plaintiff's argument is not persuasive.   Viewing the evidence
in a light most favorable to Defendants, many questions of material
fact remain that would not permit the court to grant Plaintiff
judgment as a matter of law on any of the remaining claims.   The
question of whether Defendants' actions advanced a legitimate
penological goal is a mixed question of law and fact, the issue of
Defendants' motivation with respect to the retaliation claims is a
question of fact, as is their decision to seize and destroy
religious property.   Accordingly, Plaintiff's Motion for judgment as
a matter of law is **DENIED.**

**MOTION FOR APPOINTMENT OF COUNSEL**

On November 29, 2005, the court reserved ruling on Plaintiff's
Motion for Appointment of Counsel.   (Ct. Rec. 73, 79.)   However, in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
AND CERTAIN OTHER SCHEDULING DATES -  17

1   light of the denial of Defendants' Motion for Summary Judgment, and
2   to assist Plaintiff with mediation prior to trial, the court
3   appoints the Center for Justice to represent Plaintiff in an
4   unbundled capacity during any mediation proceedings that might
5   occur. Accordingly, the court **GRANTS IN PART** Plaintiff's Motion for
6   Appointment of Counsel. **(Ct. Rec. 73.)**

7                              **MEDIATION**

8       **COUNSEL ARE DIRECTED TO CONFER WITH THEIR CLIENTS AS SOON AS IS**
9   **REASONABLE AND DECIDE WHETHER THEY AGREE TO MEDIATE. THE PARTIES**
10  **SHALL NOTIFY THE COURT WITHIN FOURTEEN (14) DAYS OF THE DATE OF THIS**
11  **ORDER BY LETTER COPIED TO THE OPPOSING PARTY, AS TO WHETHER THEY**
12  **AGREE TO MEDIATION. THE UNDERSIGNED WILL LOCATE A VOLUNTEER**
13  **MEDIATOR TO MEET WITH THE PARTIES AT THE U.S. COURTHOUSE.**

14      **APPLICATION FOR WRITS OF HABEAS CORPUS AD TESTIFICANDUM**

15      Plaintiff has filed an Application for Writs of Habeas Corpus
16  ad Testificandum, which the court construes as a Motion to
17  transport, seeking the presence of the following individuals,
18  inmates at AHCC, to testify at trial: Xavier Sarden, Christopher
19  Bird, Samuel Martin, Roy Nicholas and Larry Givens. (Ct. Rec. 55.)
20  With the exception of witnesses Sarden, Bird and Givens, the court
21  is unable to discern from Plaintiff's submissions the nature of the
22  testimony witnesses Martin and Nicholas would provide and whether
23  their testimony remains relevant in light of the dismissal of some
24  of the claims. **WITHIN TEN (10) BUSINESS DAYS** from the date of this
25  Order, Plaintiff may resubmit his Motion with supplemental proffers,
26  if any, as to the testimony to be presented by witnesses Martin and

27
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
28  MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
    APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
    WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
    AND CERTAIN OTHER SCHEDULING DATES -  18

1  Nicholas.   Plaintiff's Application, construed as a Motion to
2  transport witnesses Arden, Bird and Givens ia **GRANTED.**

3  **PRETRIAL CONFERENCE AND SCHEDULING CHANGES**

4       The pretrial conference, previously set for January 11, 2006,
5  at 2:30 p.m., is **RENOTED** for **February 1, 2006, at 2:30 p.m.,** to
6  permit the parties time to engage in mediation.  The trial date,
7  previously set, **February 13, 2006,** remains unchanged.  At least
8  fourteen (14) days before the final scheduled pretrial conference,
9  all counsel and pro se parties shall confer in a good faith attempt
10 to formulate a pretrial order, to be filed as a stipulated order no
11 later than five days before the conference.  The court may cancel a
12 conference for which a stipulated order has been filed.  Should the
13 parties fail to agree on a pretrial order, each shall prepare a
14 proposed pretrial order, to be served and submitted to the District
15 Court Executive no later than five (5) days before the conference.
16 If oral argument is necessary, it will be by telephone.  The
17 Defendants will initiate the call to Magistrate Judge Imbrogno at
18 **509-353-0660.**  During the pretrial conference, a date will be set
19 for the Courtroom Deputy to prepare a list of potential jurors.

20      Additional changes to the court's Scheduling Order are as
21 follows:

22      **EXHIBIT LIST.**  Exhibit lists shall be filed and served and
23 exhibits made available for inspection (or copies provided) on or
24 before **January 17, 2006.**  Objections to exhibits shall be filed and
25 served on or before January 26, 2006, and shall be heard at the
26 pretrial conference. All exhibits shall be pre-marked: Plaintiff's

27 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
   MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
28 SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
   APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
   WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
   AND CERTAIN OTHER SCHEDULING DATES -  19

are to be numbered 1 through 99; Defendants' are to be numbered 100-199.

**DEPOSITIONS.** Relevant, substantive deposition testimony (as distinguished from impeachment testimony) shall be highlighted by colored marker and served on the opposing party before **January 17, 2006.** Cross-designations of relevant deposition testimony shall be highlighted in a different color and served on the opposing party on or before **January 20, 2006.** Objections to any designated deposition testimony shall be filed and served on or before **January 26, 2006. No deposition testimony shall be filed with the District Court Executive.**

**MOTIONS IN LIMINE.** All unresolved substantive or evidentiary issues which may foreseeably arise during trial shall be addressed by motion to be served and filed not later than **January 26, 2006.**

**IT IS ORDERED:**

1.  Plaintiff's Motion for Appointment of Counsel **(Ct. Rec. 73)** is **GRANTED IN PART;** the Center for Justice is appointed to represent Plaintiff in an unbundled capacity for any mediation proceedings that may occur.  Plaintiff remains responsible for filing pro se any pretrial pleadings that are due during the month of January 2006.

2.  Plaintiff's Application for Writs **(Ct. Rec. 55),** which the court construes as a Motion to transport, is **GRANTED in part.** Orders to Transport Plaintiff, as well as witnesses Sarden, Bird and Givens, to appear and testify at trial on or after **February 13, 2006,** shall be issued. **WITHIN TEN BUSINESS DAYS** from the date of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
AND CERTAIN OTHER SCHEDULING DATES -  20

1   this Order, Plaintiff may resubmit a motions to transport with

2   supplemental proffers, if any, as to the testimony to be presented

3   by witnesses Martin and Nicholas.

4       3.   Defendants' Second Motion **(Ct. Rec. 66)** to dismiss the

5   claims involving the October 2001 retaliation against Defendant

6   Powell is **GRANTED;** to dismiss claims against Defendants in their

7   official capacity is **GRANTED;** and to dismiss claims seeking

8   compensation for the loss of personal property is **GRANTED**.  Those

9   claims are **DISMISSED WITH PREJUDICE**.  All other remaining claims

10  shall proceed to trial.

11      4.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 39)** is

12  **DENIED.**

13      5.   The District Court Executive is directed to enter this

14  Order and furnish copies to Plaintiff, to appointed counsel for

15  Plaintiff, and counsel for Defendants.  A copy of this Order shall

16  be provided to the U. S. Marshal and to officials at the Airway

17  Heights Corrections Center.

18      DATED December 20, 2005.

19

20              _____
                    S/ CYNTHIA IMBROGNO
21              UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR
28  SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR
    APPOINTMENT OF COUNSEL; GRANTING IN PART APPLICATION FOR
    WRITS AD TESTIFICANDUM; AND RENOTING PRETRIAL CONFERENCE
    AND CERTAIN OTHER SCHEDULING DATES -  21